### Psulkowski Estate

*Mark J. Udren,* of *Marion, Satzburg, & Marion,* for account.

*Chester Thomas Cyzio,* for executor, individually.

*Robert S. Kravitz* and *James W. Sutton, Jr.,* for Commonwealth, claiming inheritance tax.

SHOYER, J., October 4, 1973.—Reverend Walter A. Psulkowski died on September 6, 1971, not survived by a spouse, leaving a handwritten will dated August 11, 1971, whereby he disposed of his estate as recited below.

Letters testamentary were granted to Joseph A. Daniels, the accountant, on September 23, 1971, and proof of publication of the grant of the same is hereto attached.

Robert S. Kravitz, Esq., and James W. Sutton, Jr., Esq., appeared for the Commonwealth claiming inheritance tax and the awards will be made subject thereto.

The statement of proposed distribution lists the claim of Reverend Francis S. Palecki, Pastor of St. Adalbert's, in the sum of $932.50, as having been paid the caterers for refreshments supplied after decedent's funeral, as admitted. There being no objections, the claim is allowed and directed to be paid.

Attached hereto is a copy of the notice of the Attorney General as parens patriae of gifts to charities under Rule *55, and the clearance certificate executed by James W. Sutton, Jr., Esq., Special Assistant Attorney General.

An issue is presented as to the proceeds of policy no. 21 916 168, issued by the New York Life Insurance Company naming as beneficiary "Reverend Joseph A. Daniel, Executor of Estate."

The account shows that there were two additional policies issued by the New York Life Insurance Company, both containing the same designation of beneficiary. One policy was in the amount of $1,041.15, the other in the amount of $170.42. All three policies are mentioned by testator in his holographic will.

The first two numbered paragraphs of the will relate

to testator's funeral and funeral arrangements. Next the will provides:

"To such an estate or monies as it pleased God to entrust me with, I dispose as follows:

"(N.B. Everything (^ll money) that is left over after my funeral expenses goes for masses for the happy repose of my soul at five ($5.00) dollars per).

"1. My N. Y. Life Insurance Policies Nos. 12 097 701 and 12 380 278 with their accrued interests are to cover my undertaker expense—Eugene Gniewek. If it short of $1500.00 dollars—executor please add. It won't make the undertaker rich but give him a job."

Paragraphs numbered 2, 3 and 4 contain additional directions as to decedent's funeral.

Paragraph numbered 5 reads as follows:

"My monies just now are (a) N. Y. Life Insurance Policy 21 916 168 (matures Jan. 10, 1972)—(the money may be placed elsewhere): b. Home Life Group Insurance: c. Bank certificates with First Pennsylvania— also checking account: d. certificates and saving account with Almond Saving and Loan Association Ridge Avenue Philadelphia, Penna., e. One Safe Deposit Box at First Pennsylvania with silver and paper money in it (N.B. executor contact Ed Sharbeh (Cherry St. Pottstown, Pa.) or some other coin collector and sell them the coins of value) f. I don't know about death benefits from Social Welfare or medicare."

Paragraphs numbered 6 and 7 provide for the disposal of his automobile and other personal belongings.

Paragraph numbered 8 directs the sale of any real estate, of which he admits, parenthetically, he owns none, and the proceeds "turned over to my Mass fund."

The remainder of his will reads as follows:

"9. After all expenses are satisfied (including the executor's fee—sorry it wasn't much more Pal) I again

emphasize the fact that all the residue of my monies goes into My Soul's Mass Fund to be given to priests by my executor only at 5.00 per mass for the happy repose of my soul.

"10. And I hereby nominate constitute and appoint a nice guy, my friend Father Joseph Daniel of the Archdiocese of Philadelphia, Penna. as executor with power of attorney of this will and testament.

"11. In witness thereof I, the Rev Walter A Psulkowski have to this will written in long hand on three sheets of paper set my hand and seal this 11th of August 1971.

"/s/ Rev. Walter A. Psulkowski

"P.S. If I overlooked any income add to my Mass Fund if expense, deduct.

"All unsaid Masses are to be returned to Rev. Joseph March.

"Witnesses—August 11, 1971

"/s/ Helen J. Kelly

"/s/ Angela M. Connor

"P.S. There are priests (Polish too) who are retired or live in distant parishes who perhaps would need an intention. This is only a suggestion. Do not beg them to accept."

Father Daniel accounted for the two smaller policies as part of decedent's estate and his account shows a funeral bill of $1,214. The proceeds of the major policy, no. 21 916 168, he claims for himself, alleging that the beneficiary designation "Executor of Estate" is descriptive only and does not impose any responsibility upon him to dispose of the proceeds in his fiduciary capacity.

From my long familiarity with the law of life insurance, especially beneficiary designation, I was at first inclined to agree with the arguments presented on behalf of Father Daniel. Life insurance law determines the proper payee on the basis of identification, and, if

the description is erroneous, it is deemed superfluous and is ignored. Thus, in Haberfeld v. Mayer, 256 Pa. 151, the policy was payable to "William Haberfeld, business partner." When the policy was taken out by the insured, he and the beneficiary were in business together and the insured was indebted to the beneficiary for a business loan of $1,500, the amount of the policy being $2,000. Prior to the insured's death, the partnership was dissolved with the balance of indebtedness of $600 still owing Haberfeld. Our Supreme Court held that Haberfeld was entitled to the total proceeds saying:

"Haberfeld is described in the policy as a business partner and not as a creditor and there is no mention of the debt in the policy, and Mayer had reserved the right to change the beneficiary at his own desire, but he never did so. We are of opinion that Haberfeld would have a right to the proceeds of the policy even if he had not been either a partner or creditor, and the fact that he was either or both could not make the policy less beneficial for him than if he had no such interest at all."

In Horton v. Horton, 28 Erie 192, it was held that a beneficiary designated as wife, although there was no marriage which would justify calling her by that title, was entitled to receive the proceeds, the court saying, "An insured may name his paramour as beneficiary of his insurance policy, and the addition of the word 'wife' after the name of a person not the legal wife of the insured, will not, of itself, deprive her of the benefits of the policy."

In Overbeck v. Overbeck, 155 Pa. 5, and in Hendricks v. Prudential Insurance Company, 149 Pa. Superior Ct. 350 (allocatur refused), our appellate courts held that the woman with whom insured had been living who was designated as beneficiary with the descriptive term

"wife" added, was entitled to the proceeds as against the claims of insured's legal wife.

Counsel for Father Daniel contends that although testator in his will made express provision for the use of the two small policies, he gave no directions with regard to the third policy. This is simply not so. The provisions of testator's will bespeak but two concerns, namely, arrangements for his funeral and stipends "for masses for the happy repose of my soul at five ($5.00) dollars per." For this latter purpose, he directs the use of "everything (all money) that is left over after my funeral expenses" and again in Paragraph 9, "I again emphasize the fact that all the residue of my monies goes into My Soul's Mass Fund, . . ."

In Paragraph 5 he specifically refers to this New York Life Insurance Policy as part of "my monies." He was aware that the policy would mature in about five months so he added that then "the money may be placed elsewhere."

Counsel for Father Daniel argues that "Executor of Estate" was added to "Reverend Joseph A. Daniel" in the policy beneficiary designation because Joseph Daniel is a common name. The Philadelphia telephone directory lists nine persons as "Joseph Daniel" or "J. Daniel," it is true, but no "Reverend" is listed. I am not convinced that the fiduciary description was added merely for the purpose of identification.

The intentions of a testator are paramount. When they can be determined from a careful reading of the four corners of his will, they must be given effect. Thus, in Stancik Estate, 451 Pa. 20, 24, our Supreme Court recently said: "It is basic law that a will must be construed to effectuate the intent of the testator whenever possible so long as that intent is lawful."

I find and I so hold that testator made express provi-

sion for policy no. 21 916 168 and that the proceeds of this policy are to be used for masses "for the happy repose of my soul at five ($5.00) dollars per."

The fund of New York Life Insurance Company Policy 21 916 168 is entered "short" in the account. The sum of $9,187.20, together with any interest thereon, if any, is charged to the accountant and will be awarded as part of the residuary estate for masses at $5 per for the repose of testator's soul.

Accountant has made claim for commission at the rate of five percent on principal personalty of $19,-677.39, plus $9,187.20 and income. Counsel has made claim for attorney's fee in the sum of $2,200. There being no objection, these claims are allowed.

All parties in interest are stated to be sui juris and to have had notice of the audit and the questions involved.

The account shows a balance of principal of $17,681.79

add New York Life Insurance Company policy, no. 21 916 168, as above 9,187.20

together $26,868.99

less credit as per appearance slip $ 46.00

to Marion, Satzburg & Marion, Esqs., counsel fee 2,220.52

to Joseph A. Daniel executor, commission, 5%, on principal (and income, if any) 1,443.23

to Rev. Francis S. Palecki, claimant 932.50 4,642.25

leaving $22,226.74

which, composed as indicated in the account, subject to such inheritance tax as may be due and assessed, subject to distribution heretofore properly made, together with income, if any, is awarded:

To Reverend Joseph A. Daniel, Executor of the Estate of Walter Psulkowski, deceased, for testator's soul's mass fund, to be given by him to priests only at $5 per mass for the repose of testator's soul.

Accountant is authorized to make the necessary transfers, as above.

And now, October 4, 1973, the account is confirmed nisi.